# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 989 | **DATE** | Nov. 21, 2001 |
| **CASE TITLE** | Kellers Systems, Inc. v Transport International Pool, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing 12/12/01, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, Kellers' motion to dismiss TIP's counter-claim that Kellers failed to take reasonable action to recover the managed units is denied and Kellers' motion to dismiss TIP's counter-claim for indemnification is granted. Doubledown's motion to dismiss TIP's veil-piercing claim is denied.
(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | NOV 2 6 20** date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 18 |
| | Mail AO 450 form. | | (docketing deputy initials) | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
NOV 26 2001

| | |
|---|---|
| KELLERS SYSTEMS, INC., a New York corporation, <br><br> Plaintiff, <br><br> v. <br><br> TRANSPORT INTERNATIONAL POOL, INC., a Pennsylvania corporation, <br><br> Defendant. <br><br>——————————————————— <br><br> TRANSPORT INTERNATIONAL POOL, INC., a Pennsylvania corporation, <br><br> Counterplaintiff, <br><br> v. <br><br> KELLERS SYSTEMS, INC., a New York corporation, and DOUBLEDOWN STABLES, INC., an Illinois corporation, <br><br> Counterdefendants. | No.   01 C 0989 <br><br> Judge Robert W. Gettleman |

## **MEMORANDUM OPINION AND ORDER**

**Procedural History**

Plaintiff/Counter-defendant Kellers Systems, Inc. (Kellers) sued Defendant/Counter-plaintiff Transport International Pool, Inc.'s (TIP) in the Circuit Court of Cook County, Illinois alleging breach of contract and conversion and seeking specific performance of a contract. TIP removed the case to this court pursuant to 28 U.S.C. § 1446, and filed an answer and a two-count counterclaim alleging a breach of the same contract by Kellers. The counter-claim also added Doubledown Stables, Inc.'s (Doubledown) as a counter-defendant, alleging that Doubledown is



essentially the alter-ego of Kellers and seeking to hold Doubledown responsible for Kellers's alleged breach of contract. Kellers and Doubledown have moved this court to dismiss TIP's counter-claims pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Kellers and Doubledown's Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

At the heart of this case are between 274 to 331 apparently missing or unavailable semi-trailers and the subsequent responsibilities for their recovery.[1] Kellers, a New York corporation with its principal place of business in Chicago, Illinois, leases tractor-trailers. TIP is a Pennsylvania Corporation engaged in the business of renting, servicing and leasing semi-trailers in Illinois and throughout the United States. Doubledown is an Illinois corporation with its principal place of business in Illinois.

On December 9, 1997, Kellers and TIP entered into an Asset Purchase Agreement pursuant to which TIP would buy Kellers's assets in its semi-trailer leasing business. The December 9 agreement, together with four subsequent amendments, constitutes the entirety of the asset purchase agreement (the "Agreement"). The parties agreed that Pennsylvania law would govern the "validity, performance, and enforcement" of the Agreement.[2] Additionally, the parties agreed that some of Kellers's assets, specifically certain semi-trailer units that were

---

[1] The exact number is apparently in dispute but is not essential to the disposition of this motion. The court merely notes the two numbers quoted by Kellers and TIP.

[2] The Agreement contains a choice of law provision which provides: "[t]he validity, performance and enforcement of this Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law thereof, except that with respect to matters regarding the transfer of right, title to and interest in any Contract, the laws governing such Contract shall govern." (¶13.10 of the Agreement).

2

apparently missing or unavailable due to customer disputes between Kellers and its lessees, would remain excluded from the December 9 sale. The parties termed these missing or unavailable units as the "Managed Units," and agreed that both Kellers and TIP would assume certain responsibilities with respect to these semi-trailers. Paragraph 2.5(c) of Amendment 3 to the Agreement and Paragraph 3 of Amendment 4 to the Agreement encompass the parties' obligation with respect the "Managed Units." Paragraph 2.5(c), in relevant part, states:

> Buyer [TIP] agrees to manage the accounts for each such excluded Unit, including without limitation monitoring insurance certificates, billing in the ordinary course, and forwarding all payments received on account of each such unit directly to Seller [Kellers]. In respect to each lease, Seller shall take whatever action Seller deems appropriate to terminate the lease, conclude the lease, and recover the Unit or allow the lease to complete its term. When and as Seller recovers each Unit, Seller shall deliver the Unit to Buyer. Buyer shall thereupon pay the Seller the fair market value for such Unit.

Paragraph 3 of Amendment 4 provides:

> For each of the Managed Units (those identified under paragraph 2.5(c) as amended in Amendment No. 3), Seller [Kellers] agrees to immediately send notice to each of the lessees advising each such lessee that the respective lease is terminated at the end of the minimum term and the Units are to be immediately returned to a TIP branch location. TIP shall draft the letter, to KELLERS' satisfaction, and shall provide the branch location for each such return. *If any lessee fails to return such Units as directed, KELLERS will take such action as is reasonably necessary to pursue the prompt recovery of such Units.* [Emphasis added]

As evidenced by the present litigation, the "Managed Units" were never recovered or presented for sale pursuant to the Agreement. Kellers sued TIP, arguing that TIP failed to perform its obligations to manage the accounts of the "managed units," that TIP held possession of the titles to the missing units, and that TIP's actions precluded Kellers from recovering the missing units.[3] TIP counter-claimed, alleging a breach of contract on Kellers's part, claiming

---

[3]Kellers and TIP dispute who holds the titles to the missing units.

3

that Kellers failed to "take such action as is reasonably necessary to pursue the prompt recovery of such Units" under paragraph 3 of Amendment 4. TIP also alleges that Kellers breached the agreement by filing suit against TIP, and seeks recovery pursuant to the indemnification provisions provided in the Agreement. Finally, TIP alleges a veil-piercing claim against Doubledown, claiming that Doubledown commingled funds with Kellers and hence should be held liable for any damages to TIP as the result of Kellers's alleged breach of contract.[4]

## DISCUSSION

### Standard of Review

In reviewing a motion to dismiss, the court does not address the merits of the counter-claim, but merely tests the sufficiency of the pleading. Deberry v. Sherman Hospital Ass'n, 741 F.Supp. 1302, 1303 (N.D. Ill. 1990). Under the federal notice pleading standards, all well-pleaded allegations are construed liberally, and dismissal is proper only where the claimant can prove no set of facts to support the allegations. Conley v. Gibson, 355 U.S. 41, 46 (1957). All well-pleaded facts are taken as true and the claimant is entitled to all reasonable inferences therefrom. Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 733 (7th Cir. 1986). Consequently, a complaint does not fail due to either vagueness or lack of detail. Strauss v. City of Chicago, 760 F.2d 765 (7th Cir. 1985).

### TIP's Breach of Contract Claims

Count I of TIP's counter-claim alleges breach of contract on Kellers's part. First, TIP alleges that Kellers breached the agreement by failing "to take such action as is reasonably necessary to pursue the recovery of the managed units," and that Kellers' failure to recover the

---

[4]Kellers and Doubledown are both owned by Richard Templer.

Managed Units abrogates TIP's obligation to purchase those units. Essentially, TIP argues that its obligation to purchase has not accrued due to Kellers's failure to perform.[5] Kellers asserts that TIP has not alleged any damages, other than the costs of litigation, due to Kellers' claimed breach. Thus, Kellers argues the breach of contract claim should be dismissed.

To state a claim for breach of contract against Kellers, TIP must allege the following: (1) the existence of a valid contract; (2) TIP complied with the Agreement and performed its obligations; (3) Kellers breached the Agreement; and (4) Kellers' breach has damaged TIP. See Pierce v. Montgomery County Opportunity Board, Inc., 884 F. Supp. 965, 970 (E.D. Pa. 1995). Under the liberal notice pleading standards of Rule 8(a), TIP need assert only a "short and plain statement" as to the elements of the breach of contract claim. Fed. R. Civ. P. 8(a); See Ryan v. Mary Immaculate Queen Ctr., 188 F.3d 857, 860 (7th Cir. 1999).

Neither Kellers nor TIP dispute the existence of a valid and binding contract. TIP has alleged that Kellers breached the Agreement by failing "to take such action as is reasonably necessary to pursue the recovery of the Managed Units." TIP requests that the court enter judgment for money damages due to Kellers's breach of the Agreement. While TIP's complaint does not specifically detail the damages due to Kellers's failure to recover the missing units, on a motion to dismiss the court must afford all reasonable inferences in favor of the claimant. See Ed Miniat, Inc., 805 F.2d at 733. Dismissal is proper only where the claimant can prove no set of facts to support the claim. See Conley, 355 U.S. at 46. The court finds that TIP has at least provided sufficient notice to Kellers of a breach of contract claim. TIP's request for damages is

---

[5]This claim on its surface sounds more in avoidance, and may have been properly alleged as an affirmative defense under Fed. R. Civ. P. 8(c). Under the notice pleading requirements in Rule 8(a), however, the court is disinclined to reconfigure TIP's claim into a defense.

not solely limited to indemnification.⁶ In any event, TIP has stated a claim for breach of contract. Therefore, Kellers' motion to dismiss TIP's counter-claim, with respect to the allegation that Kellers failed to take reasonable action to recover the missing units, is denied.

Second, Count I of TIP's counter-claim asserts a breach of contract by Kellers based on the indemnification provisions of the Agreement. TIP claims that Kellers breached the Agreement "through its filing of the Complaint." Consequently, TIP seeks indemnification for the attorney's fees, costs, and expenses of defending the lawsuit. Essentially, TIP claims the indemnification provisions of the contract provide for fee-shifting in lawsuits between the two parties to the Agreement. Kellers argues the indemnification provisions of the contract apply to third-party claims only. The issue is whether the indemnification provisions of the Agreement extend to a lawsuit filed by one party to the Agreement against the other. Based upon the parties' choice of law provision in the Agreement, Pennsylvania law governs the construction of the indemnification agreement.

Courts construe indemnification provisions strictly and interpret their application "against the party seeking their protection." Lackie v. Niagara Machine and Tool Works, 559 F.Supp. 377, 378 (E.D. Pa. 1983) *citing* Dilks v. Flohr Chevrolet, 192 A.2d 682 (1963). Pennsylvania law requires the court "to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." Bethlehem Steel Corp. v. MATX, Inc., 703 A.2d 39, 42 (Pa. 1997) *citing* Halpin v. LaSalle University, 639 A.2d 37, 39 (Pa. 1994). While an indemnitee may recover attorney's fees and costs in defense of litigation covered by an

---

⁶TIP may be able to show damages due to Kellers's alleged breach in lost profits from the missing trailers. Additionally, TIP may have incurred some losses in the management of the accounts, and may have been damaged if those units are never recovered.

6

indemnity agreement, see Boiler Engineering & Supply Co. v. General Controls, Inc., 277 A.2d 812, 814 (Pa. 1971), the intent to indemnify for the particular dispute or claim must be clear from the terms of the Agreement. See Bethlehem Steel Corp, 703 A.2d at 43.

Under Pennsylvania law, the court may not insert specific terms for indemnification into words of general import. See Perry v. Payne, 66 A. 553, 557 (Pa. 1907); Ruzzi v. Butler Petroluem Co., 588 A.2d 1, 8-10 (Pa. 1991).[7] Consequently, for TIP to state a claim for indemnification from Kellers for the costs, attorneys' fees, and expenses for defending the instant lawsuit brought by Kellers, it must appear clear from the terms of the indemnification provisions. Kellers's indemnification obligation, contained in paragraph 11.1(b) of the Agreement, in relevant part, states:

> In addition to any other indemnification provided for under this Agreement or any Ancillary Document, Seller [Kellers] shall indemnify, defend and hold harmless Buyer [TIP] and each other member of the Buyer Group from and against any and all Losses incurred or suffered by any member of the Buyer Group arising out of, resulting from or relating to:...
>
> > (b)  Any failure by Seller to perform any of its covenants or agreements contained in this Agreement or any Ancillary Document.

With respect to the Managed Units, paragraph 2.5(c) of the Agreement contains an additional indemnification provision, stating, "Seller [Kellers] shall indemnify and hold Buyer [TIP] harmless from any loss, cost or liability which may arise as a result of Buyer's performance

---

[7]The court notes these cases addressed the question whether the indemnification provisions covered losses for claims against the indemnitee based on the indemnitee's negligence. The rule provides that "a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms." Ruzzi, 588 A.2d at 8. Nonetheless, the court finds this rule of contract interpretation applicable to a claim for indemnification for the costs associated with a lawsuit between the two parties to the contract.

7

of the operation of such Units as herein provided." TIP claims that Seller's obligation to hold it "harmless" for "any loss" precludes Kellers from filing suit for breach of contract. Consequently, TIP argues that Kellers' filing suit violates the "hold harmless" provision and triggers the indemnification obligations.

The court finds this argument without merit. Initially, there is no express language within the indemnification provisions that provides for fee-shifting in suits between TIP and Kellers. The court is bound by Pennsylvania law to refrain from inserting specific terms into general language. See Payne 66 A. at 557; Ruzzi 588 A.2d at 8-10. Additionally, the court must strictly construe the scope of the indemnification provisions against the party seeking its benefit. See Lackie 559 F.Supp. at 378. Therefore, the court may not include fee-shifting where the contract is silent.

At least one court interpreting Pennsylvania law has answered the question whether an indemnification provision compensates an indemnitee for the damages and costs of defending a lawsuit filed by the indemnitor against the indemnitee. See Horizon Unlimited, Inc. v. Silva, 1998 U.S. Dist. LEXIS 12410 (E.D. Pa. Aug. 12, 1998). In Horizon, the defendant/seller counterclaimed against the plaintiff/buyer for breach of contract claiming that the plaintiff breached by filing suit. Horizon 1998 U.S. Dist. LEXIS 12410 at *2. The defendant claimed the purchase agreement contained a "hold harmless" provision that bound the plaintiff to pay the costs and damages of the defense of a suit brought by the plaintiff against the defendant. Id. The plaintiff moved to dismiss arguing that the contract did not call for indemnification of the costs of a lawsuit brought by the plaintiff. The court found that indemnification for the costs of the suit was not the "clear intent" of the parties based on the contractual language. Id. Contrarily,

the court looked to the contract as a whole and found that the parties intended the indemnification provision to apply to third-party claims. Consequently, the court granted the plaintiff's motion to dismiss the counterclaim.

In the instant case, examining both paragraphs 11.1 and 2.5(c) of Amend. No. 3 in the context of the whole Agreement, the court finds the indemnification provisions were intended to apply to third party claims.[8] The parties provided an "Indemnification Procedure" by which the resolution of claims for which each party agreed to indemnify would follow. (¶ 11.3 of the Agreement). These procedures include obligations to send notice regarding the existence of claims, assumption of the defense of claims, settlement, and the opportunity to join in defense of litigation. The court agrees with Kellers that the "Indemnification Procedure" provisions would be nullified if the indemnification obligations applied to a lawsuit between TIP and Kellers. Therefore, the court finds the indemnification provisions of the agreement do not encompass fee-shifting for lawsuits filed by the parties to the Agreement. Accordingly, Kellers' motion to dismiss TIP's counter-claim for indemnification is granted.

## TIP's Piercing Claim

Count II of TIP's counter-claim alleges commingling of funds between Kellers and Doubledown, and implicitly asserts that Doubledown and Kellers are a single entity. TIP claims that Doubledown is liable for Kellers' alleged breach of the Agreement and seeks money damages from Doubledown. Kellers and Doubledown have moved the court to dismiss TIP's

---

[8]Under Pennsylvania law the court examines contract provisions in the context of the whole agreement and gives effect to provisions in relation to others. See Halpin v. LaSalle University, 639 A.2d 37, 39 (Pa. Sup. Ct. 1994); Marcinak v. Southeastern Greene School District, 544 A.2d 1025, 1027 (Pa. Super. Ct. 1988).

veil-piercing claim against Doubledown, claiming that Pennsylvania law does not recognize the "single-entity" theory of liability advocated by TIP in veil-piercing cases.

The parties dispute the controlling law of TIP's veil-piercing claim against Doubledown. TIP asserts that Illinois law applies to its veil-piercing claim. Doubledown claims Pennsylvania law applies. Doubledown argues that the choice of law governing the Agreement controls the veil-piercing claim since TIP seeks to hold it responsible for Kellers's alleged breach of the same Agreement. The court finds Doubledown's argument that Pennsylvania law controls is without merit. In determining which state's law applies, the court looks to the choice-of-law provisions of the forum state, here Illinois. See Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496 (1941). Illinois follows the internal affairs doctrine as its choice-of-law principle in cases alleging impropriety of corporate governance. See Bagdon v. Bridgestone/Firestone, Inc., 916 F.2d 379, 382-83 (7th Cir. 1990); Paulman v. Kritzer, 230 N.E.2d 262 (1967) *affirming* 219 N.E.2d 541 (Ill. Ct. App. 1966); see also Restatement (2d) of Conflicts of Law §§301-10. Under the internal affairs doctrine the substantive law of the state of incorporation governs. See Heyman v. Beatrice Co., 1995 WL 151872 at *6 (N.D. Ill. April 3, 1995).

It is undisputed that Doubledown is incorporated in the state of Illinois, is not a party to the Agreement, and was not involved in the sale of Kellers' assets to TIP. Doubledown fails to establish any colorable basis for applying Pennsylvania law to TIP's veil-piercing claim other than a bare assertion that Pennsylvania law applies because TIP and Kellers agreed that Pennsylvania law would govern the validity and effect of the Agreement. Doubledown's only argument that Pennsylvania law applies is grounded in a contract to which it is not a party and

under which it ultimately seeks to avoid responsibility.[9] Illinois law governs TIP's veil-piercing claim against Doubledown.

Piercing the corporate veil is an equitable remedy that Illinois courts "should undertake reluctantly." See Walker v. Dominik's Finer Foods, Inc., 415 N.E. 2d 1213, 1217 (Ill. 1981). Under Illinois law, courts will abrogate separate corporate identity where it is shown "that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." Main Bank of Chicago v. Baker, 427 N.E.2d 94, 101 (Ill. 1981); Illini Motor Co. v. The Department of Revenue, 488 N.E.2d 274, 276 (Ill. App. Ct. 1985). Illinois recognizes the "single-entity" theory of piercing the corporate veil, see Main Bank, 427 N.E.2d at 102. To establish a veil-piercing claim, the claimant must prove two elements:

> First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 570 (7th Cir. 1985).

However, Van Dorn does not hold that the above elements must be pleaded in order to survive a motion to dismiss. See Steel Warehouse of Wisconsin, Inc. v. Caterpillar, Inc., 1990

---

[9]Doubledown argues Pennsylvania law applies because it perceives an advantage. Doubledown argues that Pennsylvania law does not recognize "single-entity" liability in veil-piercing cases. The court expresses no opinion on Pennsylvania law with respect to veil-piercing, but notes the dubious nature of Doubledown's claim. Doubledown would ostensibly concede it is a single-entity with Kellers in order to avail itself of the Agreement's contractual choice-of-law provision in the hope that the court would find for Doubledown because Pennsylvania law does not recognize the "single-entity" theory of liability. The court finds this argument without merit.

11

U.S. Dist. LEXIS 19153 *5 (N.D. Ill. Nov. 13, 1990). Under Rule 8(a)'s liberal notice pleading standards, the court will not dismiss a complaint unless it is clear there are no facts that complainant could prove consistent with the pleadings. See Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Where a claimant fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied. See Steel Warehouse, 1990 U.S. Dist. LEXIS at *5.

In this case, it is undisputed that Kellers and Doubledown share common ownership by Richard Templer. Additionally, while TIP has failed to allege that Doubledown's separate corporate existence no longer exists or that Doubledown is a mere instrumentality of Kellers, TIP alleges Doubledown and Kellers commingled funds. TIP's assertion of commingling surrounds six separate payments from TIP to Kellers for the benefit of CIT Systems, Inc (CIT). TIP agreed to pay Kellers specified sums owed to CIT for CIT's lease of semi-trailers to Kellers ("the CIT payments") until such time as TIP and Kellers could obtain a novation from CIT to replace Kellers with TIP. (¶ 2.4 of the Agreement.) TIP alleges that five of the CIT payments were in a bank account jointly held by Kellers and Doubledown and at least one of the CIT payments was in an account held solely by Doubledown. TIP alleges that Templer, the owner of both Kellers and Doubledown, used the accounts interchangeably and commingled the assets of Kellers and Doubledown.[10] Consequently, TIP seeks to hold Doubledown and Kellers as one entity and that Doubledown should be held responsible for Kellers's alleged breach of contract. Under the liberal notice pleading standards, TIP has fairly alleged that Doubledown and Kellers operate as a

---

[10]TIP alleges that Templer in fact requested TIP to deposit at least one CIT payment directly into an account held by Doubledown.

12

single entity to the extent that Kellers and Doubledown have been apprised of TIP's claim. Doubledown's motion to dismiss Count II of TIP's complaint is denied.

## CONCLUSION

For the aforementioned reasons, Kellers' motion to dismiss TIP's counter-claim that Kellers failed to take reasonable action to recover the "managed units" is denied, Kellers' motion to dismiss TIP's counter-claim for indemnification is granted, and Doubledown's motion to dismiss TIP's veil-piercing claim is denied.

This matter is set for a report on status on December 12, 2001 at 9:00 a.m.

**ENTER: November 21, 2001**

_____
**Robert W. Gettleman**
**United States District Judge**